# In the
# United States Court of Appeals
# for the Second Circuit

August Term 2022

(Argued: January 3, 2023; Decided: March 12, 2025)

No. 22-1114-cv

---

ANNA GRISTINA,

*Plaintiff-Appellant,*

*v.*

JUAN MERCHAN, New York State Judge, in an official capacity, ALVIN BRAGG, New York County District Attorney, in an official capacity,

*Defendants-Appellees.*

---

Before: MENASHI, LEE, AND MERRIAM, *Circuit Judges.*

Appeal from an order and judgment of the United States District Court for the Southern District of New York (Crotty, *J.*) dismissing the Plaintiff-Appellant's complaint for lack of subject-matter jurisdiction. Plaintiff-Appellant, Anna Gristina, sued the Defendants-Appellees pursuant to 42 U.S.C. § 1983, seeking

injunctive and declaratory relief ordering the unsealing of certain state court transcripts. The district court dismissed the complaint for lack of subject-matter jurisdiction pursuant to the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). We hold that the district court properly abstained from exercising jurisdiction. Therefore, we AFFIRM.

Judge Menashi dissents in a separate opinion.

―――――――――――――

LAWRENCE P. LABREW, Law Office of Lawrence LaBrew, New York, NY, *for Plaintiff-Appellant*.

DAVID LAWRENCE III, Assistant Solicitor General (Barbara D. Underwood, Solicitor General, *and* Ester Murdukhayeva, Deputy Solicitor General, *on the brief*), for Letitia James, Attorney General for the State of New York, New York, NY, *for Defendant-Appellee* Justice Juan Merchan.

ROBIN MCCABE, Assistant District Attorney (Alvin L. Bragg, Jr., District Attorney for New York County as Special Assistant Corporation Counsel, Steven C. Wu, Assistant District Attorney, *on the brief*), for Alvin L. Bragg, Jr., District Attorney for New York County, New York, NY, *for Defendant-Appellee* Alvin Bragg.

―――――――――――――

EUNICE C. LEE, *Circuit Judge*:

This appeal stems from Plaintiff-Appellant Anna Gristina's efforts to unseal several transcripts related to her 2012 New York State criminal prosecution and conviction for promoting prostitution. Nearly ten years after Gristina pleaded guilty to this state offense, Gristina filed a series of motions before Defendant-Appellee Justice Juan Merchan, who presided over her criminal case, requesting that the state court unseal several transcripts and other materials. After Justice Merchan denied Gristina's motion in part—but while that decision was still under review by higher state courts—Gristina filed suit in federal court under 42 U.S.C. § 1983 against Justice Merchan and New York District Attorney Alvin Bragg seeking declaratory and injunctive relief ordering the state court to unseal three specific transcripts.

The federal district court dismissed the suit, concluding that it was required to abstain from exercising jurisdiction under *Younger v. Harris*, 401 U.S. 37 (1971), because at the time Gristina brought her federal suit, the state court order denying unsealing of the transcripts was a pending matter in New York State court that involved a quintessentially judicial function. Alternatively, the district court concluded that the rule derived from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923),

and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) ("*Rooker-Feldman*"), prohibited it from reviewing the state court order denying unsealing because that order was a final state court judgment of which Gristina's suit invited review and rejection. Gristina appealed.

We hold that the district court properly abstained from exercising jurisdiction pursuant to the *Younger* abstention doctrine. The state court's order denying unsealing, which was still under review by higher state courts at the time Gristina filed her federal suit, was a pending civil proceeding "uniquely in furtherance" of a state court's ability "to perform [its] judicial functions." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 368 (1989) ("*NOPSI*"). Thus, *Younger* abstention was required. Accordingly, we AFFIRM.

## BACKGROUND

In connection with her position running a high-end prostitution ring, Anna Gristina pleaded guilty to one count of promoting prostitution in the third degree in violation of New York Penal Law section 230.25(1) on September 25, 2012. Justice Juan Merchan (a Defendant-Appellee in this case) sentenced Gristina to six months' imprisonment and five years' probation. Gristina did not appeal her state conviction.

On January 14, 2021, nearly ten years after her guilty plea, Gristina filed a motion with Justice Merchan requesting that he unseal various transcripts from proceedings related to her criminal case. The January 14th motion requested the unsealing of four transcripts and any documents related to those transcripts.[1] In the page-and-a-half brief submitted with her January 14th motion, Gristina argued only that, pursuant to the Sixth Amendment and New York's due process clause, she "ha[d] a right to view, or copy, any Court Document, or Court Record . . . in order to put on a defense, to take legal action with regard to [her] case, or to [receive] counsel . . . about prospective legal matters." Joint App'x at 24. The New York District Attorney's Office opposed the motion to unseal.

On March 22, 2021, Justice Merchan issued an order addressing Gristina's various unsealing requests. The court's order noted that one of the requested transcripts was not sealed and another most likely should not have been sealed and would be reviewed *in camera* to confirm. This left three documents: a September 25, 2012 transcript, an August 13, 2012 transcript, and an August 16, 2012 transcript.

---

[1] On March 12, 2021, Gristina added a request to unseal one additional transcript, and unredacted copies of a search warrant, a search warrant affidavit, and all related minutes, bringing the total requested transcripts to five.

As to the September 25th transcript, Justice Merchan observed that it had been "transcribed by a Court Reporter who is no longer employed by the Office of Court Administration. The transcript has been ordered from storage, and once retrieved, the supervising Court Reporter will determine whether it is sealed." Joint App'x at 15.

The remaining two transcripts Gristina sought related to proceedings in which she was not directly involved. The court noted that the sealed August 13th transcript "involve[d] the co-defendant exclusively ([Gristina] was not present*)."* *Id.* at 13. The sealed August 16th transcript "involve[d] an *ex parte* matter."[2] *Id.* The court's order noted that, due to a clerical error, the court reporter had already provided Gristina with copies of the sealed transcripts from August 13th and 16th. After noting that "[i]nherent power exists in rare instances for a court to seal its records and, in cases that are still rarer, to unseal them," Justice Merchan concluded that Gristina had failed "to meet her burden to demonstrate why the sealed minutes of August 13th and 16th should be unsealed." *Id.* at 14. He also concluded that Gristina had not provided justification for remaining in possession of the mistakenly released transcripts. *Id.* Accordingly, Justice Merchan ordered

---

[2] Another August 16th transcript from a "calendar call at which [Gristina] appeared, and certain pre-trial matters were discussed on the record" was unsealed. Joint App'x at 13.

that the August 13th and 16th transcripts remain sealed and that Gristina return the copies of them that she had erroneously received. *Id.* at 14–15.

On June 7, 2021, Gristina filed a petition for a writ of prohibition or mandamus pursuant to New York Civil Practice Law and Rules section 7801 ("the Article 78 petition") with the New York State Supreme Court, Appellate Division, First Department, requesting a judgment requiring unsealing of the August 13th, August 16th, and September 25th transcripts.[3] The Article 78 petition named, among others, Justice Merchan, and then-District Attorney of New York County Cyrus Vance, as defendants and asserted federal due process and equal protection claims. The First Department denied and dismissed the Article 78 petition without comment on October 14, 2021; and on January 11, 2022, it denied Gristina's motion for leave to appeal. On June 16, 2022, the New York Court of Appeals denied

---

[3] Gristina moved for a writ of mandamus, i.e., a civil remedy, rather than directly appealing Justice Merchan's order because the right to review of sealing orders entered in criminal proceedings is not explicitly authorized by statute. *See Harper v. Angiolillo*, 89 N.Y.2d 761, 768 (1997) (noting that no statutory authority exists allowing the appeal of a Criminal Term of County Court's denial of an unsealing motion); *Hynes v. Karassik*, 47 N.Y.2d 659, 661 n.1 (1979) (noting in a case involving a motion to unseal criminal records that "[i]f the appeal is being taken from an order entered in a 'criminal proceeding', we would be required to dismiss inasmuch as there is apparently no statutory authority for such an appeal"); *Santangello v. People*, 38 N.Y.2d 536, 538 (1976) ("The right to appeal in criminal cases is determined exclusively by statute[.]"); *see also* N.Y. Crim. Proc. Law § 1.20(18) ("'Criminal proceeding' [includes] any proceeding which . . . occurs in a criminal court and is related to a . . . completed criminal action[.]").

Gristina's motion for leave to appeal.  *Gristina v. Merchan*, 38 N.Y.3d 910, 910 (2022) (unpublished disposition).

On October 20, 2021—after the First Department's denial and dismissal of the Article 78 petition but *before* the First Department's denial of leave to appeal that denial and *before* the Court of Appeals's June 16, 2022 denial of leave to appeal—Gristina filed this action under 42 U.S.C. § 1983 in the Southern District of New York.  The § 1983 suit again named Justice Merchan and then-District Attorney Vance as defendants in their official capacities.[4]  Like the Article 78 petition, the federal suit claimed that Vance's opposition to and Justice Merchan's denial of Gristina's motion to unseal violated her federal due process and equal protection rights.  The federal suit sought injunctive and declaratory relief ordering unsealing of the transcripts.  Bragg and Justice Merchan moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to *Younger* abstention, and alternatively to the *Rooker-Feldman* rule, and for failure to state a claim due to judicial and prosecutorial immunity.

---

[4] By operation of Federal Rule of Civil Procedure 25(d), Defendant-Appellee Bragg was automatically substituted as a defendant in lieu of Vance after Bragg assumed the office of District Attorney for New York County in 2022.

The district court dismissed Gristina's complaint without prejudice on May 19, 2022 (Crotty, *J.*). The district court concluded that *Younger* abstention was warranted because the Article 78 petition, which was still pending appeal in state court, involved the decision to seal or unseal transcripts—"a quintessentially judicial function." Joint App'x at 202. Alternatively, the district court held that the *Rooker-Feldman* doctrine prohibited direct review of the state trial court's order denying unsealing because it was a final state court judgment.

This appeal followed.

## DISCUSSION

The *Younger* abstention doctrine embodies the "longstanding public policy against federal court interference with state court proceedings." *Younger*, 401 U.S. at 43. Though "[i]n the main, federal courts are obliged to decide cases within the scope of federal jurisdiction," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013), "there are some classes of cases in which the withholding of authorized equitable relief because of undue interference with state proceedings is 'the normal thing to do.'" *NOPSI*, 491 U.S. at 359 (quoting *Younger*, 401 U.S. at 45). Out of this deference to state comity, *Younger* and its progeny have identified three categories of "exceptional" situations in which the prospect "of undue interference with state

proceedings" triggers *Younger* abstention. *Id*. at 359, 367–68. Those three categories are: (1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 72–73 (quoting *NOPSI*, 491 U.S. at 367– 68). Specifically, we have observed that "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022).

At issue in this appeal is whether Gristina's Article 78 petition, which was pending at the time her federal suit was filed and sought unsealing of records in her decade-old New York criminal case, falls within *Younger*'s third category. More specifically, the question is whether the Article 78 petition was a pending proceeding "uniquely in furtherance of the state court['s] ability to perform [its] judicial functions." *Sprint*, 571 U.S. at 73 (quoting *NOPSI*, 491 U.S. at 368). We review a district court's abstention decision under the *Younger* doctrine *de novo*. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 90 (2d Cir. 2004). Applying our precedent to this case, we hold that because the act of ordering the sealing (or

unsealing) of state court files is a state court process uniquely in furtherance of judicial functions, the district court properly abstained under *Younger*.

As a threshold matter, we must consider whether the Article 78 petition was a pending civil proceeding for purposes of *Younger* abstention. A civil proceeding is pending if further state appellate remedies are available at the time of filing the federal complaint. *See Hansel v. Town Ct. for Town of Springfield, N.Y.*, 56 F.3d 391, 393 (2d Cir. 1995) (noting that there was "an ongoing state proceeding" for purposes of *Younger* abstention where the state action was still pending at the time plaintiff "brought this action before the district court"); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608 (1975) ("[A]ll of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings[.]"). The Dissent argues that *Younger* should be inapplicable if the state court proceedings, which were pending at the time of the federal filing, become final *at any point* during the federal proceeding. *See Post* at 9–12. Our Court's case law, however, clearly indicates that the *Younger* abstention issue is evaluated at the time of filing, and it is not continuously re-evaluated throughout

the pendency of a proceeding.[5]  *See Hansel*, 56 F.3d at 393 ("*Younger* applies if state prosecution was pending at the time of *filing* of federal action."  (citing *Dubinka v. Judges of Superior Ct. of the State of Cal. for the Cnty. of L.A.*, 23 F.3d 218, 223 (9th Cir. 1994))); *Cecos Intern., Inc. v. Jorling*, 895 F.2d 66, 72 (2d Cir. 1990) (finding *Younger* abstention inapplicable "when there is no state action pending at the time the federal suit is filed").

---

[5] The Dissent relies on two cases, *Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022), and *Pathways, Inc. v. Dunne*, 329 F.3d 108 (2d Cir. 2003), to argue that our Circuit recognizes "that *Younger* does not apply when the state proceedings are no longer ongoing."  *See Post* at 10.  This reliance is misplaced.  In both *Silva* and *Pathways*, the plaintiffs sought to enjoin ongoing state court proceedings against them—but in both cases, those state proceedings had ended.  *See Silva*, 47 F.4th at 89; *Pathways*, 329 F.3d at 113–14.  The Court thus found that the claims for injunctive relief *themselves* were moot, and therefore the *Younger* abstention issue was simply no longer relevant—not that *Younger* itself required the state court proceeding to be extant through the entirety of the federal court proceedings.  *See Silva*, 47 F.4th at 89 ("Although there was an ongoing state prosecution when Silva filed his federal complaint, that proceeding has now ended.  Silva's first claim—and the *Younger* issue associated with it—is therefore moot."); *Pathways*, 329 F.3d at 114 ("Pathways' claims for injunctive relief against Brookridge Defendants, at least insofar as those claims dealt with state cases pending when the District Court ruled, are now moot because those cases are concluded.").

To be sure, both *Silva* and *Pathways* recognized that *Younger* did not bar plaintiffs' claims for injunctive relief from *future* suits.  *See Silva*, 47 F.4th at 89 ("Those forward-looking claims were not barred because *Younger* is not a bar to federal court action when state judicial proceedings have not themselves commenced." (internal quotation marks omitted)); *Pathways*, 329 F.3d at 114 ("To the extent that Pathways' injunctive claims seek relief from future suits, they are neither moot nor removed from federal jurisdiction by . . . *Younger* principles.").  Gristina, however, is not seeking relief from a future action by a New York State court, but rather relief from particular final judgments in a civil proceeding that was pending at the time she filed her suit.

This makes sense. "*Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 75 (2d Cir. 2003) (internal quotation marks omitted). The Dissent's position on the timing of *Younger*'s application would result in such friction. If *Younger* abstention is to be evaluated at the time of a federal court's decision, rather than solely at the time of filing, one of two outcomes is likely to occur. Federal district courts would properly abstain under *Younger* when a suit was filed, but would be consistently reversed by the Circuit because the state proceeding would have likely ended by the time the case reached the Circuit. Alternatively, to avoid this consistent reversal, federal district courts would sit on their hands, waiting to issue decisions until the state proceedings came to an end and *Younger* became inapplicable. Both outcomes would result in a federal court proceeding looming over the state court proceeding. From the perspective of the litigants, this rule would create an incentive for plaintiffs to file duplicative proceedings in federal court before the end of their state court proceedings, hoping that by the time the district or circuit court ruled on the merits, the state court proceedings would have ended. All of these situations

would hamper one "fundamental purpose" of *Younger* abstention: "avoid[ing] a duplication of legal proceedings." *Younger*, 401 U.S. at 44.

The *Younger* doctrine, as the Dissent notes, "is a rule of comity that aims to avoid interference with certain ongoing state proceedings." *Post* at 9. This notion of comity serves to ensure "proper respect for state functions." *Younger*, 401 U.S. at 44. However, adopting the Dissent's rule, and allowing a federal court proceeding to loom over the state court proceeding, would not treat the federal and state systems as "co-equal sovereigns"—nor would it "enhance[] the dignity of the state sovereign." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2d Cir. 2002) ("Federal interference with state proceedings, because it necessarily presumes that state court review will be inadequate, affronts the dignity of the state sovereign.").

At the time she filed the complaint in federal court, Gristina had yet to receive a decision regarding her motion for leave to appeal the Article 78 denial. *See Gristina*, 38 N.Y.3d at 910. "Indeed, given the early stage at which [Gristina] sought federal court intervention, it is possible that [her petition] could have been favorably resolved, thus obviating the need to address the [] question[s] raised before the district court." *Hansel*, 56 F.3d at 393. The state court matter, therefore,

remained pending at the time of filing, and the district court properly considered whether *Younger* abstention should apply.

Of course, it is not enough for *Younger* abstention that Gristina's Article 78 petition was pending at the time of filing her federal suit; the petition also must fit into one of the three *Younger* categories justifying "the withholding of authorized equitable relief because of undue interference with state proceedings." *NOPSI*, 491 U.S. at 359. *Younger*'s first and second categories—pending state criminal prosecutions and pending civil enforcement proceedings—plainly do not apply here. Thus, whether the district court properly abstained under *Younger* depends on whether the Article 78 petition to order a court to unseal its own records falls into *Younger*'s third category, i.e., whether the denial of the unsealing request was uniquely in furtherance of the state court's ability to perform its judicial function.

Contrary to Gristina's primary argument on appeal, we conclude that both the underlying order sealing records from her criminal proceeding, and by extension the Article 78 petition to unseal those records, are uniquely in furtherance of the state court's ability to perform its judicial function.[6] In her

---

[6] In addition, Gristina argues for the first time on appeal that "great and immediate irreparable harm" and Defendants-Appellees' alleged bad faith compel an exception to *Younger* abstention. Appellant's Br. at 19. "[I]t is a well-established general rule" that we

15

Article 78 petition, Gristina was asking a New York State appellate court to order State Supreme Court Justice Merchan to unseal transcripts he had previously determined were properly sealed. Case law supports a finding that such state court sealing orders are "uniquely in furtherance" of a court's judicial functions because they are critical to the court's administration of its cases, its recordkeeping, and its ability to maintain the integrity and, when necessary, the confidentiality of its proceedings.

Although the Supreme Court has not comprehensively defined what it means for a pending civil proceeding to be "uniquely in furtherance of" a state court's ability to perform its judicial function, two decisions, which identify civil

---

"will not consider an issue raised for the first time on appeal." *Greene v. United States*, 13 F.3d 577, 586 (2d Cir. 1994). Gristina also argues that *Younger* abstention was inappropriate because the state court could not have addressed the relevant federal claims or provided the requested relief. Yet Gristina's Article 78 petition disproves this claim, as it challenged the order denying unsealing on the same federal constitutional grounds as her federal complaint, and Gristina does not explain why a favorable outcome on her Article 78 petition, i.e., a writ of prohibition or mandamus requiring unsealing, would not also have vindicated her federal constitutional rights. *See Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 71 (2d Cir. 1990) ("[T]he question of whether the statute has been *applied* in an unconstitutional fashion may be raised directly in an Article 78 proceeding."); *accord Samuels v. Mackell*, 401 U.S. 66, 73 (1971) (holding that the *Younger* doctrine requires dismissal of claims for both injunctive and declaratory relief because "the basic policy against federal interference with pending state [proceedings] will be frustrated as much by a declaratory judgment as it would be by an injunction"). In other words, Gristina's § 1983 claim is essentially a direct appeal of the state court's decision to a federal court.

contempt orders, *Juidice v. Vail*, 430 U.S. 327 (1977), and post-civil judgment bond and lien requirements, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987), as falling within *Younger*'s third category, are the points from which our analysis starts. As the Supreme Court has explained, civil contempt orders and post-judgment bond and lien requirements are uniquely in furtherance of a state court's judicial function because they are "processes by which the State compels compliance with the judgments of its courts," *Pennzoil*, 481 U.S. at 14–15, and they implicate the "State's interest in protecting the 'authority of the judicial system, so that its orders and judgments are not rendered nugatory,'" *id.* at 14 n.12 (quoting *Juidice*, 430 U.S. at 336 n.12). From *Juidice* and *Pennzoil*, we take the lesson that "the *processes* by which the State compels compliance with the judgments of its courts" are due *Younger* abstention. *Cavanaugh*, 28 F.4th at 434 (quoting *Pennzoil*, 481 U.S. at 13–14).

The Dissent seems to suggest that the Supreme Court primarily intended to cabin *Younger*'s third category to cases "involv[ing] 'coercive enforcement' of the state's judicial orders." *Post* at 5 (quoting *Rio Grande Cmty. Health Ctr., Inc. v. Rullan*, 397 F.3d 56, 69 n.9 (1st Cir. 2005)); *see also Post* at 7 (suggesting that *Younger* abstention does not apply in this case, in part, because "[t]he orders declining to

unseal the transcripts were not coercive"). Yet, the Dissent acknowledges that the Supreme Court has *rejected* the notion that whether a pending civil enforcement proceeding is within *Younger*'s ambit depends on "whether the underlying state proceeding is 'coercive' rather than 'remedial.'" *Sprint*, 571 U.S. at 80 n.6; *see Post* at 5. The Supreme Court concluded that such an inquiry was neither "necessary [n]or inevitably helpful, given the susceptibility of the designations to manipulation." *Sprint*, 571 U.S. at 80 n.6 And though the Supreme Court made this observation in the context of *Younger*'s second category—civil enforcement proceedings—it undercuts the idea that coercion is necessary for *Younger* abstention under any category.

While admitting that a coercive order is not required, the Dissent nonetheless argues that "the third *Younger* category involves orders by which the state compels compliance with its judgments." *Post* at 5. The Dissent suggests that this Circuit has applied the third *Younger* category only "to cases involving *enforcement* of state court judgments." *Post* at 6 (emphasis added). However, we have held that when an order involves the "*way*" that a state court manages its proceedings in a "subject[-area] in which the state[] ha[s] an especially strong interest," it is "integral to the State court's ability to perform its judicial function."

*Falco v. Justs. of the Matrim. Parts of Sup. Ct. of Suffolk Cnty.*, 805 F.3d 425, 427–28 (2d Cir. 2015) (emphasis added) (internal quotation marks omitted). Therefore, a challenge to this type of integral order, and not merely the enforcement of the underlying state court judgment, is "clearly" within *Younger*'s third category. *Id.* at 428. Thus, in *Falco*, we concluded that a pending state proceeding that involved an order requiring a parent to pay the fee for their child's court-appointed attorney in a family court proceeding was entitled to *Younger* abstention because (i) the order implicated the way New York courts manage their divorce and custody proceedings, an area in which (ii) the State has an especially strong interest. *Id.* at 427–28.

Our Court's decision in *Cavanaugh* confirms this reading of *Falco*. In that case, we described *Younger*'s third category as encompassing *both* challenges to "*processes* by which the State compels compliance with judgments of its courts" *and* challenges to "*the way* that New York courts manage their own . . . proceedings." *Cavanaugh*, 28 F.4th at 434 (first quoting *Pennzoil*, 481 U.S. at 13–14, then quoting *Falco*, 805 F.3d at 427); *see also id.* at 430 (holding that "*Younger* abstention applies only to a narrow class of state civil proceedings"—those that "protect[] the State's administration of its judicial system *or* its process for

compelling compliance with the judgments of its courts" (emphasis added)). While the Dissent appears to characterize *Cavanaugh* as concerning "'administrative processes, powers, and functions'" only in so far as they are relevant to when "'the state courts [] adjudicate the matters before them and enforce their judgments,'" *Post* at 7 (quoting *Cavanaugh*, 28 F.4th at 434), nothing in that decision restricts application of the third *Younger* category to instances involving the *actual enforcement* of the state court judgment. To the contrary, *Cavanaugh* makes clear that even challenges to "the [state] court's basic *authority* to enforce its orders" is of concern. 28 F.4th at 434 (emphasis added).

Therefore, following *Falco*, Gristina's pending civil proceeding regarding the sealing and unsealing of materials in a state court criminal proceeding clearly meets these requirements for *Younger*'s third category, i.e., that it implicates the way a New York court manages its proceedings in an area in which the state has an especially strong interest.

First, there is no doubt that a challenge to an order denying unsealing is fundamentally a challenge "to *the way* that New York courts manage their own . . . proceedings." *Id.* (quoting *Falco*, 805 F.3d at 427). Sealing court records is one of dozens of procedural decisions that are necessarily made by a state court in any

given case to manage and advance its own proceedings. In *Falco*, for example, this Court observed that a court's ability to select and provide for the compensation of counsel in divorce and custody proceedings was "integral to the State court's ability to perform its judicial function." 205 F.3d at 428. The principle was simple: in order for a court to move its proceedings along efficiently, effectively, and fairly, it must be able to ensure adequate representation of the parties. Similarly, the choice to seal or disclose sensitive records and proceedings is the very sort of decision that a court must make to efficiently conduct its business while balancing the "right to access against the need to either protect witnesses or ensure the defendant's right to a fair trial." *In re Daily News, L.P. v. Wiley*, 126 A.D.3d 511, 513 (1st Dep't 2015). This is why the act of sealing and disclosing records falls "within the inherent power of the court to control the records of its own proceedings." *Id.* at 512; *see also Mancheski v. Gabelli Grp. Cap. Partners*, 39 A.D.3d 499, 502 (2d Dep't 2007) (holding that "good cause" to seal documents requires "prudent exercise of the court's discretion, and thus a case-by-case analysis is warranted") (internal quotation marks and citation omitted).

Second, decisions to unseal implicate the significant interest that "[e]very court," including every state court, has in exercising "supervisory power over its

own records and files." *Nixon v. Warner Commc'ns*, Inc., 435 U.S. 589, 598 (1978); *see Spargo*, 351 F.3d at 75 ("[F]ew interests can be considered more central than a state's interest in regulating its own judicial system.").[7] The courts of New York have long recognized this power to control their records as one that "inheres in the very constitution of the court." *Dorothy D. v. N.Y.C. Prob. Dep't*, 49 N.Y.2d 212, 215 (1980) (quoting *Vanderbilt v. Schreyer*, 81 N.Y. 646, 648 (1880)). The authority to decide the necessity of sealing records in a criminal proceeding is extremely important to the State, as it involves balancing the right of access to courts with, among other things, a "defendant's Sixth Amendment right," *In re Daily News, L.P.*, 126 A.D.3d at 512, the safety of alleged victims, and the protection of confidential law enforcement investigative procedures. *See, e.g.*, *United States v. Cojab*, 996 F.2d 1404, 1408 (2d Cir. 1993) (noting that sealing and closure may be warranted when

---

[7] On appeal, Gristina argues that there cannot be a sufficient state interest in a court's power to seal because the New York Legislature "codified the State's interest" in parties "purchas[ing] a transcript" by enacting New York Judiciary Law section 300. *See* Appellant's Br. at 16. Section 300 directs the stenographer to, "upon the payment of his fees allowed by law therefor, furnish a certified transcript . . . in any case reported by him, to any party to the action." N.Y. Jud. Law § 300. Gristina contends that, read strictly, because the power to seal is not included in the statute, it cannot be read into it. *See, e.g.*, *Lawrence Constr. Corp. v. State*, 293 N.Y. 634, 639 (1944) (holding that a court must not read implicit powers into statutes unless absolutely necessary). However, when considering section 300 in its context, we observe that it exists within Article 9 of the New York Judiciary Law, which specifically concerns stenographers. *See* N.Y. Jud. Law § 290. Gristina points to no case which has read section 300 to give an implied power to stenographers to override the power of a court to seal records, and we will not do so here.

"an ongoing government investigation may be jeopardized or where publicity might put at risk the lives or safety of government agents engaged in undercover activities"); *Crain Commc'ns, Inc. v. Hughes*, 74 N.Y.2d 626, 628 (1989) (holding that the decision to seal "must, by its very nature, involve the balancing of competing interests, an inquiry which obviously involves a measure of discretion"). In the same way that the orders providing for court-appointed counsel in *Falco* were "integral to the State court's ability to perform its judicial function in divorce and custody proceedings," *Falco*, 805 F.3d at 428, an order to seal or unseal is integral to a state court's ability to "control the records of its own proceedings," *In re Daily News, L.P.*, 126 A.D.3d at 512, and perform its judicial function in any proceeding that may require secrecy, *see Nixon*, 435 U.S. at 598 (noting various circumstances in which "the common-law right of inspection" may need to "bow[] before the power of a court" to seal its records).

A court's decision to seal or unseal materials to protect the integrity of sensitive criminal proceedings is part of the very core "processes, powers, and functions" of a state court with which *Cavanaugh* warns we should not interfere. 28 F.4th at 434. Gristina asks this Court to overturn a state court's considered judgment and order it to unseal its own judicial records. If we were to comply

with her request, we would reach into the fray of what was an ongoing state civil action and act as a *de facto* appellate court, meddling with important and considered internal administrative decisions that are made by a state court to manage its own proceedings.  Setting such a precedent would effectively invite state court litigants to impede state court proceedings by creating "duplicative legal proceedings" in federal court, *Huffman*, 420 U.S. at 604, whenever they were unhappy with a state court's procedural order in a pending case.  This would undermine a "vital consideration" underlying the *Younger* doctrine: "an aspect of federalism which [the Supreme Court] described as the notion of comity, that is, a proper respect for state functions . . . and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways."  *Id.* at 601 (internal quotation marks omitted).

Intervening at this stage in an area where the State has a particularly strong interest would implicate "[v]irtually all of the evils at which *Younger* is directed." *Id.* at 608.  Under these circumstances, the district court properly refrained from exercising jurisdiction over Gristina's claims.

**CONCLUSION**

For the reasons stated above, we AFFIRM the district court's dismissal of Gristina's complaint. Because we affirm on the basis of *Younger* abstention alone, we do not reach Gristina's remaining arguments regarding the district court's application of the *Rooker-Feldman* rule. *See Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014) ("We may . . . affirm on any ground with support in the record.").